In the Matter of the Estate of MARYETTE MATTHEWS, Deceased; EVERITT R. PINE et al., Appellants; HIRAM SMITH et al., Respondents.

1. PRESUMPTION OF LEGITIMACY. The law presumes the legitimacy of children; and this presumption applies to every case where the question is at issue, and is controlling whenever not inconsistent with the facts proved.

2. QUESTION OF FACT. When there is evidence on the one side of mere reputation, which is casual, remote and uncertain, and the presumption of legitimacy on the other, it becomes a question of fact.

3. APPLICATION OF PRESUMPTION. In a proceeding for the distribution of a decedent's estate, it was shown that the decedent and the deceased mother of certain claimants were half sisters, being children of the same mother by different fathers, and that the grandmother had married the decedent's father after the birth of the claimants' mother, and there was no evidence showing that she had not been married previously to the latter's birth. The trial court held that the claimants' mother was presumed to be a legitimate child, and that the burden of establishing her illegitimacy was upon those who asserted it. *Held*, that the presumption of legitimacy was properly applied.

*Matter of Seabury*, 1 App. Div. 231, affirmed.

(Argued June 14, 1897; decided October 5, 1897.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered February 11, 1896, which affirmed a decree of the acting surrogate of the county of Queens.

The decree was on a final settlement of the accounts of the executor of the last will and testament of Maryette Matthews, deceased. The appeal to the Appellate Division was from only so much of the decree as decided that the respondents, who are the children of Harriet Smith, were entitled to share in the distribution of the estate.

The proceeding was initiated by a petition filed by the executor, in which it was alleged that the testatrix's next of kin were the eight children of her brother, Raynor Pine, the three children of Harriet Smith, a deceased half-sister of the testatrix, and the three children or grandchildren of Eliza J. Smart, a deceased sister. None of the children or grandchildren of Eliza Smart appeared before the surrogate, or in any way contested the proceeding. The entire contest was between the respondents and the children of Raynor Pine, who are the appellants.

On the return of the citation issued upon the executor's petition the appellants filed an answer, in which they denied, upon information and belief, that the respondents were the next of kin of the decedent, or in any way legally related to her or entitled to any share of her estate.

At the request of the appellants the Surrogate's Court found that Harriet Smith and the testatrix were children of the same mother by different fathers, and that their mother, the common grandmother of the parties, married the grandfather of the appellants after the birth of the respondents' mother, who died twenty years since, and would have been eighty or ninety years of age if living.

On the hearing the surrogate held that the burden of establishing the allegations of the answer was upon the appellants, and upon neither the executor nor the respondents. This ruling was excepted to by the appellants.

*Horace Secor, Jr.,* for appellants. The acting surrogate erroneously ruled that the burden of establishing that the respondents were not the next of kin of the decedent rested upon the appellants. (*Whitman* v. *Foley,* 125 N. Y. 651;

*Chamberlain* v. *Chamberlain*, 71 N. Y. 423; *Bollermann* v. *Blake*, 24 Hun, 187; *Eisenlord* v. *Clum*, 126 N. Y. 563; 1 Greenl. on Ev. § 28; *Hynes* v. *McDermott*, 91 N. Y. 451; Abb. Tr. Ev. 79, 88; *Cochran* v. *Dinsmore*, 49 N. Y. 249.)

*Jesse Johnson* for respondents. The acting surrogate correctly ruled that the burden was on the appellants to establish the alleged illegitimacy of the mother of these respondents. (Lawson on Pres. Ev. 107, 115–119; 2 Wharton on Ev. [3d ed.] § 1298; *Teter* v. *Teter*, 101 Ind. 129; *State* v. *Worthingham*, 23 Minn. 528; *Hynes* v. *McDermott*, 91 N. Y. 451; *Caujolle* v. *Ferrié*, 23 N. Y. 90; *Gaines* v. *New Orleans*, 6 Wall. 690; *Gaines* v. *Herman*, 24 How. [U. S.] 553; *Harrison* v. *Mayor*, 4 De G., M. & G. 153; *Strode* v. *McGowan*, 2 Bush, 627; *Phillips* v. *Allen*, 2 Allen, 453; *Plowes* v. *Bossey*, 31 L. J. [Ch.] 680; *Van Aernam* v. *Van Aernam*, 1 Barb. Ch. 375; *Overlook* v. *Hall*, 81 Me. 348.)

MARTIN, J.  On the trial the Surrogate's Court held that, as the decedent and Harriet Smith were children of the same mother, and there was no evidence showing that she had not been married previously to the birth of the latter, she was presumed to be her legitimate child, and the burden of establishing her illegitimacy was upon the appellants. If the learned acting surrogate was correct in his conclusion as to the presumption of legitimacy we think he was justified in holding that the evidence introduced by the appellants was insufficient to overcome it. The question was at least one of fact, and, having been determined upon conflicting evidence and affirmed by the Appellate Division, it presents no question of law which can be reviewed by this court. Therefore, the only legal question which confronts us is whether Harriet Smith was presumed to be legitimate, in the absence of proof of the marriage of her mother previous to her birth.

We are of the opinion that, it having been established that the respondents' mother was a half-sister of the decedent, the

law presumed that she was legitimate, and the burden of establishing her illegitimacy rested upon the appellants. (*Starr* v. *Peck*, 1 Hill, 270, 272; *Caujolle* v. *Ferrie*, 26 Barb. 177, 185; *S. C.*, 23 N. Y. 90, 95, 107, 108; *Badger* v. *Badger*, 88 N. Y. 546; *Wilcox* v. *Wilcox*, 46 Hun, 32, 40; *Hynes* v. *McDermott*, 91 N. Y. 451, 459; 1 Bishop on Marriage and Divorce, § 447; 2 Wharton on Evidence, § 1298.)

In the *Starr* case Judge COWEN, in discussing the question of legitimacy, said: "To this may be added, the presumption that the parties would not indulge in a connection which was immoral, not to say criminal.   *   *   *   We are to presume against a notorious act of immorality almost as strongly as we would against the commission of a legal crime.   *   *   *   Honesty, not fraud, is to be presumed.   Thus, the law presumes not only against immorality, but even the venial offense of negligence, or breach of private duty." In *Caujolle* v. *Ferrie*, CLERKE, J., who delivered the prevailing opinion in the Supreme Court, said: "The common law also *presumes* marriage; that is, it presumes every man legitimate until the contrary be shown, as it presumes every man innocent and that every man obeys the mandates of the law, and performs his social and official duties, until the contrary be shown." It was said by Judge DAVIES, who delivered the opinion of this court in that case: "It being shown and conceded that the respondent was the son of the decedent, he was entitled to the letters.   The presumption of the law was that he was her legitimate son; and those who assume the fact of illegitimacy have cast upon them the *onus* of establishing it.   *   *   *   The law is unwilling to bastardize children, and throws the proof on the party who alleges illegitimacy; and, in the absence of evidence to the contrary, a child, *eo nomine*, is, therefore, a legitimate child. (2 Hagg. C. R. 197; 4 Eng. Eccl. R.; 13 Ves. 145.)" And then he adds: "I have been unable to find any authority in this state, on a question of legitimacy, which requires the heir, and acknowledged and conceded child, to prove an act of marriage as a requisite to maintain his legitimacy.   The presumption and the charity of

the law are in his favor; and those who wish to bastardize him must make out the fact by clear and irrefragable proof." In *Badger* v. *Badger* it appeared that the plaintiff, when about seventeen years of age, returned to her home with an infant of whom there was no acknowledged father. When this child was two or three years of age, the mother and B. were living together as husband and wife, and so continued until his death. In that case it was held that the evidence did not warrant the conclusion that the cohabitation was illicit in its origin. In the *Wilcox* case the presumption of legitimacy is recognized, and it is there said: "The presumption of innocence and of freedom from purposes and conduct immoral, applies in civil as well as in criminal cases, and satisfactory evidence is required to establish the contrary." In the *Hynes* case ANDREWS, J., said: "The law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy." Bishop says: "The presumption of innocence avails innocent children on the question of their legitimacy," while Wharton declares, "That a person, born in a civilized nation is legitimate, is a presumption of law, to be binding until rebutted."

While the question of legitimacy has most frequently arisen where marriage was claimed or proved, and the non-access of the husband, or the validity of the marriage was at issue, still it is manifest that the presumption of legitimacy is not limited to cases involving those questions. It has a wider application and applies to every case where the question is at issue. It is based upon broad principles of natural justice and the supposed virtue of the mother. It is a branch of that general rule of equity and justice which assumes the innocence of a person until there is proof of actual guilt, and whenever it is not inconsistent with the facts proved, this presumption is controlling. If a former marriage is necessary to sustain the presumption, it will be assumed until contrary proof is given. When, as in this case, there is evidence on the one side of mere reputation, which is casual, remote and uncertain, and the presumption of legitimacy on the other, it

becomes a question of fact, and the decision of the trial court must be treated as final and conclusive upon the parties.

It is true that the precise question under consideration was not involved in some of the cases cited, yet the opinions of the learned judges and text writers, who have so fully recognized and plainly stated the presumption and grounds upon which it rests are entitled to great weight and should be regarded as controlling. The existence of such a presumption is in consonance with every correct sense of propriety and justice. Any other rule would be fraught with danger and produce immeasurable uncertainty. Property rights would be rendered doubtful, and the fair fame of their ancestors might be destroyed by the cupidity of remote heirs and next of kin. There might be others who would be willing to dishonor their ancestors and bastardize their relatives to increase their patrimony. In the absence of this presumption, the protection of property and character would require proof of the marriage and legitimacy of ancestors, however remote, and in cases where it could not be obtained. To hold that this safeguard of the law does not exist would serve no good or proper purpose, and would overrule a beneficent principle of the law as it is now understood. We have no hesitation in adhering to the principle that the law presumes legitimacy and not illegitimacy; morality and not immorality; social integrity and not social dishonor, and in declaring such to be the law of this state.

As there are in this case no other questions which we deem it necessary to discuss it follows that the judgment appealed from should be affirmed, with costs.

All concur, except GRAY, J., absent.

Judgment affirmed.