MARRIAGE (§ 50*)—SUFFICIENCY OF EVIDENCE.
Evidence showing continued cohabitation and birth of a child recognized as legitimate *held* sufficient to establish a common-law marriage.
[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 86, 87; Dec. Dig. § 50.*]

In the matter of the estate of Adelbert Spink. Proceedings to revoke letters of administration. Proceedings dismissed.

F. G. Whitney and W. B. Baker, for petitioner.
A. S. Barker and Udelle Bartlett, for respondent.

MILLER, S. This proceeding was instituted by Harvey D. Spink, a son of the deceased, to revoke letters of administration issued by the Surrogate's Court of Oswego county, N. Y., to Ellen R. Spink, on or about the 22d day of June, 1908, upon the ground that she was never the legal wife of deceased. The administratrix concedes that she was never married to deceased by any ceremonial marriage, but contends there was a contract of marriage between her and Spink, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that their intercourse had been in fulfillment of that contract, and was matrimonial in character.

It appears from the evidence that the first wife of deceased died in 1898, leaving her husband and two children her surviving, one of whom is the petitioner in this proceeding, and the other a daughter over 21 years of age. For some little time prior to the death of the first wife of deceased, the said Ellen had been employed from time to time as a domestic in the family of deceased; and there is evidence to show that the conduct of the deceased and Ellen was highly improper, if not illicit, in its nature. A few months after the death of the first wife, the said Ellen went to the home of deceased, and lived and cohabited with him until his death on the 2d day of June, 1908. The family consisted of only deceased and Ellen, until 1903, when a female child was born; and all parties concede the deceased is the father of this child. She is now 5 years of age and upwards, and has always been known in the neighborhood where her father and mother have resided as Marion Spink.

On the hearing petitioner swore a large number of witnesses, who testified that it was the general repute in the neighborhood where the parties resided that they were not married. Petitioner also proved one or two instances that would indicate that Ellen did not claim to be the wife of the deceased. On the other hand, Ellen produced several witnesses who testified that it was the general repute in the neighborhood where the parties resided that they were husband and wife. As Judge Hatch says, in Tracy v. Frey, 95 App. Div. 579, 587, 88 N. Y. Supp. 874, the testimony given by the petitioner's witnesses upon this point is somewhat weakened by the fact that nearly, if not all, testified, upon cross-examination, that they understood that it was essential to a valid marriage that some civil ceremony was necessary, either by a civil magistrate or a clergyman, and that without that ceremony no lawful marriage could exist.

The respondent also shows that upon several different occasions, commencing in 1899 and continuing down to the death of Spink, he referred to her as his "wife," and introduced her to different persons as his wife. Her mother, Chloe Gay, also testified that in 1899 the deceased told her that he and Ellen were married, and that Ellen was going to his house to stay, and that they were to live together as husband and wife; that, in reply to her inquiry if they had been away to be married, Spink replied, "No;" that it was unnecessary; that they had agreed to live together as man and wife. If the validity of this marriage was to stand or fall on this woman's testimony, it would certainly fall. A mother of mature age, that would consent without protest to such an arrangement for a daughter barely out of her teens, is entitled to but little consideration at the hands of this or any other court, and her testimony should be treated accordingly.

The petitioner contended on the trial, and still contends, that all evidence of declarations of decedent and all transactions between him and Ellen subsequent to January 1, 1902, when the provisions of chapter 339, p. 933, of the Laws of 1901 took effect, were incompetent and inadmissible. The respondent contended on the trial that the alleged

contract of marriage was made in 1899, and to sustain her contention showed acts and statements of the decedent prior to January 1, 1902, when said act took effect, indicating that her relations with him were matrimonial in character. Therefore I think that acts and declarations of deceased, indicating that relationship subsequent to the act of 1901, were competent and material.

In the case of Caujolle v. Ferrie, 23 N. Y. 90, the relation in its inception was meretricious; and, although there was no proof of any ceremonial marriage or other contract of marriage thereafter, yet, as the parties continued to cohabit together, and declarations were made on the part of the mother that a child born of this marriage was legitimate, it was held that a marriage subsequent to the commencement of the illicit intercourse would be presumed, although there was no direct proof establishing such a contract. Judge Finch lays down practically the same proposition in Badger v. Badger, 88 N. Y. 546, 42 Am. Rep. 263.

Notwithstanding these cases, and subsequent decisions which seem to extend, rather than limit, this presumption, I should hesitate to find a contract of marriage in this case, were it not for the fact that the alleged statements, declarations, and acts of the deceased were followed by the birth of this little girl; and, when she was about to be born, it appears that the deceased requested a neighbor to go for a physician, stating that his wife was about to be confined; that the child bore his name, always addressed him as "papa," and, as long as her father lived, was treated in every way like a legitimate natural child. Under such circumstances, the presumption is very strong that the parents were actually married. Gall v. Gall, 114 N. Y. 109, 119, 21 N. E. 106. Judge Andrews, writing upon this point in Hynes v. McDermott, 91 N. Y. 451, 459, 43 Am. Rep. 677, says:

"The presumption of marriage, from a cohabitation, apparently matrimonial, is one of the strongest presumptions known to the law. This is especially true in a case involving legitimacy. The law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy. Where there is enough to create a foundation for the presumption of marriage, it can be repelled only by the most cogent and satisfactory evidence."

The decisions are to the same effect in Tracy v. Frey, 95 App. Div. 579, 88 N. Y. Supp. 874, and Matter of Matthews, 153 N. Y. 443, 47 N. E. 901.

A fair application of the principles laid down in these decisions, as well as those cited by the petitioner in his brief, to the facts in this case, leads me to decide, somewhat reluctantly, that there was a contract of marriage between the said Adelbert Spink and said Ellen R. Spink, and that she is his lawful widow, and is entitled to administer his estate.

It follows that the proceeding to revoke her letters must be dismissed, with costs to respondent payable out of the estate. The costs may be adjusted on any term day on five days' written notice to petitioner's attorney.

.. Proceeding dismissed, with costs.