VIRGINIA P. SCALONE, by Her Guardian ad Litem, ELENA EGGERS, et al., Plaintiffs, v. HOWARD A. SCALONE, Defendant.

Supreme Court, Special Term, Bronx County, June 8, 1950.

*T. Bernard Eisenstein* for plaintiffs.

*Ruth Gottdiener* for defendant.

EDER, J. Action for a declaratory judgment whereby plaintiffs seek a determination that the infant plaintiff Virginia Patricia Scalone is the daughter of the plaintiffs Eggers. The point made by the defendant that this court lacks jurisdiction to determine, in this action, the issue of paternity, is untenable (*Matter of Melis* v. *Department of Health*, 260 App. Div. 772, 775; *Urquhart* v. *Urquhart*, 185 Misc. 915, affd. 270 App. Div. 759; 188 Misc. 613, affd. 272 App. Div. 60, affd. 297 N. Y. 689).

In brief, the evidence establishes that Mrs. Eggers, while she was the wife of the defendant Howard A. Scalone, indulged in extramarital relations with the plaintiff Fred William Eggers (whom she subsequently married), and it is their claim that this child is the offspring of this intimacy. The defendant maintains that he is the father of the child.

Plaintiffs contend that this is an unwarranted assertion by defendant, nonexistent in fact, and that this contest regarding the fatherhood of the child results from the defendant's anger and disappointment, which stem from the refusal of Eggers to submit to an exorbitant demand by defendant that he pay defendant a large sum of money to refrain from contesting the claim of the plaintiffs that Eggers is the true father of the infant.

The case has a sordid background, evincing a lack of morality in all of the adult persons concerned. However, the court is concerned solely with the basic issue of paternity; this must be ascertained from the facts and surrounding circumstances and the probabilities in concluding where credence should be given in arriving at the ultimate determination to be made.

The evidence adduced by the plaintiffs establishes that the mother last saw the defendant Scalone on May 2, 1944, and that she did not again see him until December 24, 1945; he was then in service in the United States Navy. At the time he saw her he was on furlough; he left the United States on May 8, 1944, for oversea service and did not return to this country until October, 1945.

The infant plaintiff was born on February 5, 1945, during the defendant's service abroad. The child's mother testified that after May 8, 1944, she had a period of menstruation, viz, on May 15th and that this was her last menstruation prior to the birth of the child.

If this is so, it is adequate to establish that the defendant is not the father of this child; it would establish that she became pregnant subsequent to May 15th, at which time the defendant was outside the United States and he remained continuously overseas until long after the birth of the child.

In addition, there is medical evidence by Dr. Unger and Dr. Levine to substantiate the cause of action alleged in the complaint. Both these physicians are experts in their field in medical science; both reached the conclusion, after making blood grouping tests, that the defendant Scalone, is not the father of this child.

Dr. Unger testified that he specialized in that branch of medical science known as blood, exclusively so. His qualifications are adequate and are unquestioned. So, too, the qualifications of Dr. Levine are not questioned. Dr. Unger has been making blood grouping tests since 1916 and has written a large number of articles on this subject, published in various scientific journals throughout the country; he is the inventor of and devised

what is known as the Unger method of blood transfusion. Dr. Levine has been associated with the Rockefeller Institute, the University of Wisconsin Medical School, with various hospitals in the Metropolitan area, is consultant to the Army Graduate School and is connected with numerous medical societies of high standing; he is the author of more than one hundred original scientific papers on the subject of blood transfusions and makes a specialty of blood grouping tests; his scientific papers have been published in the leading medical journals; he is a medalist; he has made hundreds of thousands of blood grouping tests and has been appointed to take blood tests in at least five hundred court actions since 1939. He is a codiscoverer of the accepted blood grouping test embodying what is known as the M and N factors; Dr. Levine wrote the original work on the subject. Dr. Unger followed the technique used by Dr. Levine and the current recognized technique.

On April 5, 1949, the mother, the child and the defendant Scalone appeared at Dr. Unger's office and he drew specimens of their blood and made blood grouping tests of these persons and by virtue thereof he definitely excluded the defendant as the possible father of this child. He applied the M and N test, originally discovered about 1928. He explained the M and N factors and stated that red blood cells have certain characteristics and that one of them is the presence or absence of the M factor or the N factor or the presence of both of them; that each individual inherits these characteristics, one from one parent and the other from the other parent; that there are two genes.

He testified that the mother of the child has the M and N factors, having gotten the M from one parent and the N from the other parent, whereas the defendant Scalone has two N factors having gotten an N factor from one parent and the other N factor from the other parent; that the child here in concern has an M from one parent and an M from the other parent, that she has two M's. He stated: " One of these M's must have come from Elena, the mother, because she has an MN. But the other M that Virginia has must have come from her father. But this particular man, Howard Scalone, has no M. He only has two N's, so this second M must have come from her father, who is other than Howard Scalone. * * * These two M factors of Virginia must have come, one from Elena and one from the father. But there is no M factor in Howard Scalone's blood, so it couldn't have come from Howard Scalone."

With respect to the MN test, he stated it has been used ever since its original discovery in 1928 and that he knew of no exceptions to the MN test.

He further testified:

" Q. You can state with absolute certainty that Mr. Scalone is not the father of the infant Virginia Patricia? A. Utterly impossible.

" Q. Utterly impossible for him to be the father? A. For him to be the father."

In his examination Dr. Levine applied the M N blood test and also excluded the defendant Scalone as the possible father of this child.

He testified that on January 20, 1950, the mother, the child and the defendant presented themselves at his office for the purpose of obtaining specimens of their blood for blood grouping tests; that he drew specimens of their blood and made blood tests from them and that the results of these tests definitely exclude the defendant from being the father of the child. He testified:

" In this case there is an incompatibility involving the MN system. The blood of the child Virginia Patricia Scalone has the factor M. This type of blood is homozygous for M and the genotype is represented as *MM*. The child derives one M from her mother Elena Eggers. Howard A. Scalone, whose genotype is *NN* cannot contribute the other gene *M*. This definitely and decidedly excludes Howard A. Scalone as a possible father of the infant Virginia Patricia Scalone.

" Q. Is the test, upon which Howard A. Scalone is excluded as a possible father of the infant Virginia Patricia Scalone, a recognized and accepted blood grouping test in the medical profession? A. Yes, sir, this has been recognized since 1928 when Doctors Landsteiner and Levine announced the mechanism of the heredity of the MN factors.

" Q. And does the MN test which you made definitely and conclusively exclude Howard A. Scalone as the father of Virginia Patricia Scalone? A. Most definitely, it does exclude him. * * *

" Q. You stated that the MN system definitely excludes Howard A. Scalone as the father of Virginia Patricia Scalone? A. Yes, sir."

Summarized, it appears that the tests in both instances disclosed that the aforementioned persons have the following genotypes: Elena Eggers, mother,— MN: the infant Virginia Patricia,— MM; the defendant Scalone,— NN.

The fact that the mother is genotype MN establishes that the M factor was received from one of her parents and the N factor from her other parent. The defendant Scalone is genotype NN, indicating that he inherited one N factor from one of his parents and the other N factor from his other parent.

The child is genotype MM; one factor she undoubtedly got from her mother and the second M factor must have come from her father.

The blood of the defendant Scalone is, definitely, wholly lacking in any M factor and hence he could not have contributed the second M factor in the child's blood, and the ultimate conclusion is, in my opinion, properly deducible, .that he cannot be the father of this child.

In coming to this conclusion the court is not unmindful of the fact that the plaintiff Fred William Eggers was not examined or included in the blood grouping tests conducted by Doctors Unger and Levine. However, this is not regarded as of any decisive weight, for the uncontroverted medical proof is that the blood of the defendant is, as mentioned, wholly devoid of any M factor.

Of course, medical testimony is not conclusive, but it may, like all other testimony, be considered and given such credence and weight by the court to the extent that it is deemed to be trustworthy and convincing.

As against the testimony of the plaintiff Mrs. Eggers (Scalone) as to nonaccess, menstruation, conception subsequent to May 15, 1944, the mother's last period of menstruation, both occurring after the defendant had left the United States, and the medical proof of the nonpaternity of the defendant, the defendant urges that there are facts and circumstances which indicate that the testimony of the mother is untruthful and that the medical evidence should be rejected as unreliable.

In this regard the defendant submits that other tests do not exclude the defendant as the possible father. In this connection Dr. Levine testified that such other tests have no significance whatever for the reason that in the instant case in making the blood tests there were three different systems involved,— first, the AB system; second the MN; third the Rh-Hr; that these blood factors have a certain incidence in the general population, and he stated: " It so happens that the AB blood group of the true father and the Rh and Hr happen to be not very different from that of Mr. Scalone." But he was emphatic that the recognized and accepted MN test definitely excluded

defendant as the father of this child. Dr. Unger was similarly emphatic.

None of the medical testimony of the plaintiffs has been met by any counter medical proof and defendant has not manifested any satisfactory reason why the medical evidence of plaintiffs should not be accepted.

As to the testimony of Mrs. Eggers, the mother, it is true that there are facts and circumstances which, at first blush, appear to indicate a basis for the claim of the defendant that he is the father of this child, namely, that in the birth and baptismal certificates she named him as the child's father; that in procuring dependency benefits from the government for this child she named the defendant as its father, and, also, that she named him as the child's father in the Florida divorce complaint and the decree which she obtained against him.

Her actions in this regard are, however, explained by her to the satisfaction of the court. All of these records were made while she was still married to the defendant Scalone and if she had named Eggers as the true father of the child at that time she would have deliberately bastardized the child. That, in this delicate situation, she acted as she did, is quite understandable; she merely acted as any ordinary woman would act in like circumstances, to protect the child.

After due consideration and reflection it is my considered judgment that the plaintiffs have made out a case entitling them to the relief sought, and, accordingly, judgment is awarded in favor of plaintiffs and declaration is hereby made that the infant plaintiff is the daughter of the plaintiffs Elena Eggers and Fred William Eggers, and it is decreed that all public and other records be amended and corrected to so state, and it is further decreed that the infant plaintiff shall henceforth be known by the name Virginia Patricia Eggers and by no other name.

Proposed findings and form of judgment passed upon. Submit decision and judgment in conformity therewith, on notice.