ANONYMOUS, Plaintiff, v. ANONYMOUS, Defendant.

Supreme Court, Special Term, Nassau County, May 24, 1955.

*Sheehy & Friedler* for plaintiff.

*Meyer F. Goodman* for defendant.

HILL, J. This is a matrimonial action brought by plaintiff husband for judgment of separation from bed and board and for custody of an infant one year of age.

Defendant's answer denies plaintiff's allegation, '' That one child has been born of the said union of plaintiff and defendant * * * born on the 6th day of March, 1954 ''. Defendant also answers by way of counterclaim bringing in a third-party defendant, demanding a judgment declaring that plaintiff husband is not the father of the child born during the marriage and also a judgment declaring that the third-party defendant, John Doe (name fictitious), a married man with children, is the father of the child. Defendant makes no claim of nonaccess or impotency. At common law, an action such as this for a declaratory judgment would not lie either against the husband or against the putative father. Defendant must, therefore, look to statute law for relief. The early English law described a child born out of wedlock as *filius nullius*; and *filius populi* and *heres nullius*. The cruelty of the common law towards children born out of wedlock resulted in the Statute of 1623 making it a capital offense punishable by death unless an unwed mother reported her pregnant condition prior to birth and produced a witness after birth if the child should be stillborn. The first statute passed in the year 1576 with respect to illegitimate children was not for the protection of the child or the mother but the parish (18 Elizabeth I, ch. 3): '' Concerning bastards begotten and born out of lawful matrimony, (an offence against God's law and man's law) the said bastards being now left to be kept at the charges of the parish where they be born, to the great burden of the same

parish, and in defrauding of the relief of the impotent and aged true poor of the same parish, and to the evil example and encouragement of lewd life: (2) it is ordained * * * [t]hat two justices of the peace * * * within which parish * * * take order for the keeping of such bastard child, by charging such mother or father, with the payment of money weekly or other sustentation for the relief of such child, in such wise as they shall think meet and convenient: (4) and if * * * [the] reputed mother and father * * * shall not for their part observe and perform the said order; that then every such party so making default in not performing of the said order, to be committed to ward to the common gaol ".

Various statutes following the first Poor Law, so-called, were enacted for the benefit of the public, not the parties. All actions were brought in the name of the People (Rex).

The first law passed in England permitting the mother of a child born out of wedlock to bring an action in her own name was in the year 1844 (7 & 8 Victoria, ch. 101, which permitted the mother to bring an action for support and other benefits for the child).

After sweeping social progress and legal reform, New York law finally protected illegitimate children in many ways: The birth certificate might be changed, subsequent intermarriage legitimatized children born out of wedlock, they have benefits under the Workmen's Compensation Law, orders of filiation are made, they may inherit property under certain conditions, and many other benefits.

From the first English statute passed in the year 1576 until the present, in New York State the laws enacted relating to illegitimate children were of a twofold purpose: In the beginning, to reimburse the State for support, later to protect the rights of the child born out of wedlock.

All statutes define an illegitimate child as one " born out of wedlock ". The early English decisions made exceptions to the rule " born out of wedlock " where the husband was without the four seas or impotent, and even then, in cases of nonaccess, the husband's forgiveness was a complete answer to the suit. The purpose for the exception is stated by the Chief Justice in *Queen* v. *Collingwood* (17 L. J. [M. C.] 168, 12 Q. B. 681, 3 English & Empire Digest 388), in the following language: " that an order might be made on the putative father of the bastard child of the married woman, who was to be considered single under the existing circumstances and for that purpose. The Act last named is repealed, indeed, by that now in force * * *; but

the authority and the reason of the decision remains unimpaired; and the law, differently interpreted, would fail to reach a very large proportion of illegitimate children.''

We are confronted here with a wife and mother demanding that this court find, over her husband's protest, a one-year-old child, born during lawful wedlock, the parents living together as man and wife with no claim of impotency, to be illegitimate.

Defendant pleads the following by way of counterclaims: '' Sixth: That it is essential in the protection of the custodial rights of said (name omitted), as mother of said child, that the true parental status of the said child be declared and established at this time, and in this action, while the said (name omitted) and (name omitted) are still alive and amenable to the processes of this Court. Seventh: That it is essential in the protection of the various rights of the said child, property and otherwise, that her true parentage be established by a determination and declaration of this Court. Eighth: That if such determination, declaration and adjudication are delayed, or await the death of any of the parties hereto, the establishment of the true parentage of the child would be fraught with increasing difficulty and confusion and would seriously impair, impede and prejudice the rights and interests of both defendant, (name omitted), and the said child, (name omitted).''

Defendant also submits the following affidavit on this motion: '' 3. Deponent respectfully submits that, although Plaintiff's instant motion seeks very broad relief on vague and indefinite grounds, without reference to any particular statutes, deponent respectfully submits that the pleadings are such that this Court can only concern itself with the possible insufficiency of deponent's counterclaim, and that the prayer for dismissal of deponent's Answer must be denied. 4. The entire basis for Plaintiff's application is the claim that deponent in resorting to equity, comes into the Court without clean hands, and that deponent is ' blatently trying to stigmatize the infant herein as illegitimate without the justification that exists in the statutory paternity proceeding and without any compensations accruing to the infant.' 5. Without conceding that the doctrine of clean hands is applicable in this matter, deponent states that, while she will not burden this Court with all of the reasons and justifications that drove her from her husband into the arms of the man she loves, she is more than prepared to let the judgment of her conduct rest with the Supreme Judge, secure in her confidence that He will fairly judge her. 6. Deponent

respectfully directs the attention of this Court to the relief prepared on her behalf by her attorney, which is being submitted together with the instant affidavit. 7. Deponent respectfully submits that her child, who was conceived and granted the blessings of life by God-Made Law, rather than man-made law, is entitled, under both the law of God and man, to be the recognized child of the man who sired her, to share his home, his society, affection and care, and that these rights should be preserved and upheld by this Court. 8. It is therefore, readily apparent that such rights should be seriously considered by this Court in the instant action, along with the serious question as to whether or not the Plaintiff herein has any rights whatsoever with respect to custody and visitation with the child. It naturally follows, too, that the consideration and determination of such rights is inextricably intermingled with the rights of deponent to such extent.''

The defendant relies primarily on one case for the relief demanded (*Scalone* v. *Scalone,* 199 Misc. 210). In this case, there was proof of nonaccess and the mother, at the time of the suit, was divorced and had married and she and the child were living with the putative father. Other jurisdictions may be, some are, more liberal than New York in similar actions but I find no New York statute permitting a mother to bastardize her child where there is no claim of nonaccess or impotency.

The presumption of legitimacy is the strongest known to the law (*Mayer* v. *Davis,* 119 App. Div. 96, 99; *Matter of Matthews,* 153 N. Y. 443; *Matter of Findlay,* 253 N. Y. 1, 7).

Defendant argues that it may be determined by modern scientific tests that plaintiff cannot be the father of the child and that such tests can prove that the impleaded defendant *may* be the father. The father of the child cannot be determined by any known scientific method. The most that can be determined by scientific tests is exclusion.

Since the plaintiff husband is willing to assume the responsibilities of rearing the child, in the face of his wife's claim that he is not the father, born to an irresponsible, self-confessed adulterous wife, this court will not entertain an action to further injure the child. In other words, this court determines it to be the public policy of this State that a wife will not be permitted to bring an action to declare that her husband is not the father of a child born during lawful wedlock without proof of nonaccess or impotency and will be denied relief even then in the absence of proof that it is for the best interests of the child.

Since the plaintiff is not entitled to judgment on the pleadings in a matrimonial action, the matter is placed on the ready calendar of this court for inquest.

All papers in this action are hereby ordered sealed, to be opened only on order of this court.