Alexander Del Giorno, J.
This is a claim to recover damages for personal injuries sustained by claimant while a patient at Central Islip State Hospital, as a result of the alleged negligence of the State.
At the outset of the trial, the title of the claim was amended so as to read “ Ivan Howe v. State of New York ”, because that is claimant’s true name and he has attained his majority.
The claim alleges that the State was negligent in the supervision and control of the patient, particularly in failing to furnish sufficient or adequate attendants for him, in view of his known condition and while he was receiving electric shock therapy and in failing to exercise such care and caution as was required. The original bill of particulars alleged that the occurrence was caused by the negligence of the State “ in failing and omitting to provide adequate and proper supervision during the course of the electric shock therapy; in failing and omitting to provide adequate and proper care during the course of the electrical shock therapy”. The claim and the bill of particulars allege the injuries to have been compression fractures of the 5th, 6th, 7th and 8th thoracic vertebrae with wedging. Five days before the trial, claimant served upon the Attorney-General a notice stating that he intended to move to amend the bill of particulars to add: “ That defendant was further negligent in that defendant failed to properly examine plaintiff prior to administering treatment and electric shock therapy to ascertain *148 plaintiff’s physical condition and to evaluate the effect upon plaintiff of the auto accident of December 31, 1954, in which plaintiff was injured.” At the commencement of the trial, the State objected to the acceptance of this amendment.
The court stated that if the Attorney-General desired to move for an adjournment of the trial, such motion would be granted. The latter, however, informed the court that no adjournment was sought, and the court thereupon denied the objection and permitted the amendment.
The hospital record discloses that at the time claimant was admitted to the hospital on January 4,1955, his mother informed the authorities that on December 31, 1954, her son told her that he had been in an automobile accident and that he had complained of severe back pain and headache. The record states that “ tenderness was found over mid-thoracic vertebrae which was difficult to evaluate ”. The admission record, on the question of marks, bruises or scars, states only that there was a black fingernail on the left hand and several scratches on the left shin. A request for shock therapy was signed by mother and son. On January 6 he was given electroconvulsive therapy and on January 8 received another such treatment. Following the latter treatment, he complained of increasing back pain, stating that he had been in a car accident, that his back had hurt him and was now worse. X rays were taken on January 10, 1955, which revealed compression fracture of the bodies of vertebrae 5, 6, 7, 8, with 15% to 20% degree of wedging. He was placed in a body cast. On February 28, re-X rays of the thoracic spine showed the compression fractures previously noted, with fairly solid union at sites of fracture. On April 14, he had a recheck X ray taken showing essentially no change in degree of compression and evidence of beginning union. The body cast was removed. He later recovered from the fractures. His mental condition subsequently improving, his mother’s application for his discharge was approved on June 20, provided the mother furnished psychiatric care on a private basis, which she agreed to do. On June 21,1955, with a mental diagnosis of dementia praecox, catatonic type, with a mental condition designated improved and a physical condition of satisfactory, he was discharged.
With respect to the automobile accident mentioned, the hospital found as a result of an investigation that the accident had occurred on December 31, 1954 at 6:00 p.m., the patient’s name having been given on the accident report as “Ivan Rivera”. The injury noted was “ abrasion and contusion of left leg”. *149 The patient was attended by Dr. Russo of Cabrini Memorial Hospital.
There was read into the record a portion of the examination before trial of Marshal Merlán, M.D., employed by Central Islip State Hospital. This testimony was to the effect that claimant was admitted to the hospital on January 4, 1955, and that the first X rays of claimant were taken on January 10,1955.
The mother of claimant, Modesta Hernandez, testified as follows: Claimant had been in an automobile accident on December 31, 1954, and thereafter complained of pain in his back and severe headaches. He exhibited general confusion, said that he heard voices talking to him and was unaware of his name. She took him to Central Islip State Hospital on January 4, 1955, where she saw Dr. Adam, to whom she disclosed the hack injury to her son. Claimant was admitted to the hospital on that day by way of a voluntary commitment by his mother and stepfather. She visited him on January 6, 1955, at which time she spoke to Dr. Jakub. She received a letter, dated January 12, from Dr. O’Neill, Director of the Hospital, advising that claimant had received a hack injury. She went to the hospital, saw her son and spoke to Dr. Jakub. Later she saw him in a cast from the abdomen to shoulder. This cast was removed in May. He was discharged on June 21,1955, remaining at home until September, 1955, when he returned to a job he had held some three years previous. He continued working in an automobile company as a welder until December, 1959. In March, 1960, he obtained a job as a building superintendent and in that year he married.
On cross-examination the mother testified that she had been a registered nurse for 16 years, and that she signed the commitment papers, including a request for shock treatment. Prior to 1955, her son had been at the New York State Psychiatric Institute, where he had received shock treatment also, between 1951 and 1952. Between the date of the accident and the admission to the hospital in 1955, she did not have a doctor examine her son. After his discharge from the hospital, she administered thorezin pills to him which had been given her for that purpose by the hospital, but did not arrange for his visiting any aftercare clinic. She did not recall whether she was instructed to do so. Sometime after September, 1955, she took him to Dr. Stern, a general practitioner.
Raymond Hernandez, stepfather of claimant, who also accompanied claimant to the hospital, generally reiterated the testimony of his wife. He corroborated her statement to the effect that the admitting doctor was told the claimant had headaches *150 and pain in the back. He testified further that after the accident on December 31, 1954, involving claimant’s car, claimant was taken to Mother Cabrini Hospital, but was not admitted there and was taken to the police station.
The claimant testified that after the accident on December 31, 1954, he was taken by a police officer to Mother Cabrini Hospital. No doctor or nurse appeared and the officer took him to the police station, where he remained all night. He stated that he had received electric shock treatment prior to his admission to Central Islip, and that it had helped him. At Central Islip, after the administration of the electric shock treatment, he felt a sharp pain on his left side. When he informed the attendants of his pain, he was taken to the X-ray room. Later a plaster cast was placed upon him from the top of the hip to the lower portion of the chest and the cast was worn by him for two and one-half months. While the cast was on and after it was removed he felt pain in his back.
On cross-examination, he stated that on the night of the accident, prior to its occurrence, one Rafale Collaso was in the car with him, and they had a few drinks, claimant having five beers. He was taken to the station house, where a charge was made against him. He testified that an action was commenced in Supreme Court against the owner of the other car involved in the accident. At this point there was introduced into evidence an application made to the Supreme Court on February 1,1956, for an examination of claimant’s medical record at Central Islip for the purpose of obtaining therefrom the record of the accident and the injuries sustained in order to commence an action against the owner and operator of the other car. Subsequently the within claim was filed. Claimant testified that he had been involved in another accident which occurred on March 28, 1954, and a third accident on January 17, 1954. After the occurrence of these latter two accidents, he consulted his present attorney.
On redirect, he testified that the pain in his back was greater after the electric shock treatment than it had been immediately after the accident of December 31,1954 and before his admission to Central Islip.
At this point, the State moved to strike from the record the amendment to the bill of particulars which the court had permitted to be filed at the commencement of the trial. The motion was denied.
Jonny J. Stern, M.D., testified that he has practiced medicine in New York since 1940 and prior to that in Germany for seven years. He treated claimant, who complained of backache, on June 24,1958, September 21,1960 and in December. 1961. There *151 was derangement of the lower hack area for which he treated claimant. He testified that he knew electro-shock therapy and stated that its use can result in danger to a patient. In response to the hypothetical question, he stated that since the hospital authorities were aware of the occurrence of the accident prior to claimant’s admission to Central Islip, X rays should have been taken before shock treatment was applied. On cross-examination, the witness testified that he himself took no X rays of claimant; that the complaint of claimant to him could have been of any thoracic and lumbar vertebrae and that if claimant sustained a whiplash injury in an automobile accident, the cervical vertebrae would be affected and headaches would be caused.
Claimant rested, and the State moved to dismiss upon the grounds that claimant had failed to make out a prima facie case and that claimant had not established the electric shock therapy as the competent producing cause of the injuries. The State then rested, renewing its motions, decision on which was reserved.
The amended bill of particulars is permitted to remain in the record. A party may seek leave of the court to amend his bill of particulars in furtherance of justice where no prejudice results therefrom to the opposite party. (Force v. Tracy Towing Lines, 190 Misc. 446; Parsons v. Sutton, 66 N. Y. 92, 95; Dermody v. Flesher, 22 Misc. 348.) The purpose of the bill is to amplify the pleading, limit the proof and prevent surprise to the adverse party on the trial. (Elman v. Ziegfeld, 200 App. Div. 494.) Under the circumstances, the amendment in the instant case does not change the cause of action, substitute a new cause of action therefor, or involve any prejudice to defendant. (Overgaard v. Brooklyn Bus Corp., 257 App. Div. 829; Kyle v. City of New York, 155 App. Div. 401.) The court offered to impose a condition upon claimant in granting the motion (Overgaard v. Brooklyn Bus Corp., supra), but the Attorney-General waived the imposition of such condition.
The questions to be considered herein are whether claimant sustained injuries to the thoracic vertebrae in the automobile accident and, if so, whether they were aggravated by the shock treatment administered in the hospital without prior X rays; or whether the injuries were caused by the shock treatment itself, and if so, whether the administration of the shock treatment was proper under the circumstances.
The court concludes that statements were made to the hospital authorities by the claimant’s mother to the effect that back injury had been sustained by him in the automobile accident, as indicated by the testimony and by the hospital record. The *152 evidence is not clear, however, that the actual fact was that such injuries had been sustained in such accident. The police report stated only that the injury was abrasion and contusion of the left leg. The ward admission record, bearing on the notations made as to marks, bruises and scars, cited only a black fingernail and several scratches on the left shin. On the other hand, in the clinical summary, dated June 13, 1955, mention was made that at the time of his admission, “ tenderness was found over mid-thoracic vertebrae which was difficult to evaluate ”. In any event, claimant’s mother, a trained nurse, did not obtain medical care for him from the time of the accident, December 31, 1954, through the date of his admission to Central Islip on January 4, 1955, nor did she refrain from signing a request for electric shock treatment for claimant. Further, the hospital record shows that the mother’s first visit to the hospital subsequent to January 4,1955, was on January 9,1955. The court finds that claimant has failed to prove that back injury was sustained by him in the automobile accident. Even if the said injury had been so sustained, the medical proof offered by claimant failed to establish that such injuries were aggravated by the shock treatment. Dr. Stern, who first examined claimant in June, 1958, testified that if the State had known of the accident, X rays should have been taken of claimant before the administration of the shock treatment. He did not testify as to why this shock treatment without prior X ray was not accepted medical practice. He did not testify as to whether the ribs were compressed as a result of the alleged accident, before admission to the hospital, or as a result of the use of shock treatment after admission. His qualification as an expert in electric shock treatment were not presented. He himself did not cause X rays to be taken of claimant when he was consulted by him. Further, he admitted that when claimant complained to him of backache, he could have been referring to pain caused by injury to another part of his anatomy.
Proceeding to a consideration of the theory that the injury may have been caused by the electric shock treatment itself, it is clear that the fractures were discovered after the second shock treatment on January 8, 1955. Claimant has failed to establish, however, that the State was negligent in the administration of the electric shock treatment, and has not established existing medical practice and its breach by the State. Dr. Stern himself did not testify that the electric shock therapy was the competent producing cause of the injury alleged to have occurred as a result of treatment received at the hospital. So far as the obligation of the hospital toward the patient is concerned, the onus placed
*153 upon its physicians and surgeons by the law is that they must possess that reasonable degree of learning and skill which is ordinarily possessed by physicians and surgeons in the locality where they practice; they promise by implication to use the skill and learning of the average physician, to exercise reasonable care and to exert their best judgment in the effort to bring about a good result. (Pike v. Honsinger, 155 N. Y. 201.) Nor is any higher duty placed upon a doctor employed by the State than is placed upon a private practitioner. (See Schwenk v. State of New York, 205 Misc. 407.)
Claimant has failed to show lack of skill or learning of the hospital doctors, or that they failed to use their best judgment in the exercise of their skill and knowledge. (Rosen v. State of New York, 20 Misc 2d 1042.) The testimony of Dr. Stern has been evaluated carefully with reference to his general knowledge of the subject and his general knowledge of the claimant’s medical record, in order to give it the credence and weight it merits. (Scalone v. Scalone, 199 Misc. 210.) His testimony does not establish that the injuries sustained were the results of improper or negligent administration of the electric shock treatment.
The motions heretofore made by the State on which decision was reserved are granted. The claim is dismissed. This constitutes the decision of the court in accordance with the provisions of section 440 of the Civil Practice Act.