OPINION OF THE COURT
Jasen, J.
In this accounting proceeding by the Public Administrator of the County of New York, objections were filed by several potential claimants. This appeal involves only objections raised by Violet Josephine Fay Buck, who claims to be a half-sister of decedent by reason of a common father.
The decedent, John P. Fay, died intestate on August 19, 1970, in St. Nazaire, France. At his death, the decedent was a citizen of the United States and a domiciliary of the State and County of New York. His gross estate approximates $6,000,-000. Born in Edinburgh, Scotland, on April 20, 1892, the decedent’s birth certificate, registered in Edinburgh on August 11, 1892, was signed by one John Fay and Elizabeth Hunter Weatherall. Although the certificate provided for inclusion of the location and date of the marriage of the child’s parents, this information was left blank. Moreover, the certificate specifically stated that decedent’s birth was illegitimate.
On May 1, 1892, prior to the registration of his birth, decedent was baptized in Edinburgh. Unlike his birth certificate, decedent’s baptismal certificate was not signed by his parents. It did include in printed form, however, the word "conjugum”, symbolic of the lawful marital status of the child’s parents. Beyond decedent’s birth and baptismal certifi *141 cates, there exists no documentary evidence concerning his legitimacy. There exists only the remarkable tale of his early life. There is little doubt that at an early age the decedent and each of his parents parted ways. From papers found in the decedent’s possession, it appears that sometime between 1898 and 1901 the decedent was enrolled in a boarding school in Ireland. For a number of years prior to his enrollment, decedent lived in a foster home with a woman, whom he addressed as "aunt”. By the age of 13, however, the decedent, having signed aboard a sailing vessel, was living entirely on his own. He continued to work as a seaman until 1910, when he decided to reside in the United States. It was in 1918 that decedent, while serving in the United States Army, applied for United States citizenship.
As for his parents, at decedent’s birth in 1892, his mother, Elizabeth Hunter Weatherall, who had been widowed in 1888, had three sons: Arthur, William and James. The issue of Arthur — Kate Weatherall Spencer and Florence S. Weatherall —and of William — Laurette Caillol — claim to be the sole distributees of the decedent. In 1900, decedent’s father, John Fay, married one Hattie Fadley. Appellant Violet Josephine Fay Buck, an issue of this union, claims, as stated before, to be a distributee of the decedent by reason of a common father.
After considering these claims, as well as others not relevant to this appeal, the Surrogate sustained the objections of Kate Weatherall Spencer, Florence S. Weatherall and Laurette Caillol, who claimed through the mother’s bloodline, and dismissed the objections of appellant Buck who claimed relationship by reason of a common father upon the ground "that decedent was not * * * legitimate”, thereby precluding inheritance through his putative father. The Appellate Division unanimously affirmed for the reasons stated by the Surrogate.
The issue in this case is twofold: whether the decedent was illegitimate; and, if so, whether EPTL 4-1.2 (subd [b]), which precludes inheritance by the paternal kindred of an illegitimate, is violative of equal protection.
There is an established legal presumption that every person is born legitimate. (Hynes v McDermott, 91 NY 451, 458; Matter of Matthews, 153 NY 443, 447; Fisch, New York Evidence [2d ed], § 1129; Richardson, Evidence [10th ed], § 59.) Although this presumption operates most commonly in cases in which the issue involved is not the validity of the parents’ marriage, but, rather, the paternity of the child, it does come *142 into play in any case in which legitimacy is in issue. (Matter of Matthews, 153 NY, at p 447, supra.) It has often been described as "one of the strongest and most persuasive [presumptions] known to the law.” (Matter of Findlay, 253 NY 1, 7.) However, the presumption of legitimacy is not conclusive: it may be rebutted where to do otherwise would outrage common sense and reason. (Id., at p 8; Anonymous v Anonymous, 1 AD2d 312.)
The basic problem then is one of proof and it depends upon whether or not there is sufficient evidence in the record to sustain the Surrogate’s finding "that upon both the oral and documentary evidence presented it must conclude that decedent was illegitimate.” In reaching this conclusion, the Surrogate placed greater weight upon the decedent’s birth certificate than upon his baptismal certificate. As he noted, no evidence existed to establish that the decedent’s parents were present at the baptismal. This fact stands in marked contrast to the registration of the decedent’s birth — the certificate of which was signed by both parents and indicated that the child was illegitimate. As a result, the Surrogate determined that upon the evidence presented at trial, the presumption of legitimacy was overcome and therefore concluded "that decedent was not a legitimate child.” This question of fact, determined adversely to the appellant, was affirmed by the Appellate Division. Consequently, no question of law is presented which can be reviewed by our court. (See Howard v Murray, 38 NY2d 695, 699.)
With respect to the second issue on this appeal — whether EPTL 4-1.2 (subd [b]), which precludes inheritance by the paternal kindred of an illegitimate, is violative of equal protection — appellant argues that this statute discriminates unconstitutionally against decedent’s paternal kindred.
EPTL 4-1.2 deals with inheritance by or from illegitimate persons. It provides in pertinent part:
"(a) For the purposes of this article:
"(1) An illegitimate child is the legitimate child of his mother so that he and his issue inherit from his mother and from his maternal kindred.
"(2) An illegitimate child is the legitimate child of his father so that he and his issue inherit from his father if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity in a proceeding *143 instituted during the pregnancy of the mother or within two years from the birth of the child.
* * *
"(b) If an illegitimate child dies, his surviving spouse, issue, mother, maternal kindred and father inherit and are entitled to letters of administration as if the decedent were legitimate, provided that the father may inherit or obtain such letters only if an order of filiation has been made in accordance with the provisions of subparagraph (2).”
In Matter of Lalli (43 NY2d 65, app docketed No. 77-1115, 46 USLW 3498), we recently upheld the constitutionality of EPTL 4-1.2 (subd [a], par [2]) which requires, before an illegitimate child may inherit from his father, a filiation order made within the lifetime of the father in a proceeding commenced during the pregnancy of the child’s mother or within two years of the child’s birth. In Lalli, we considered the constitutionality of our statute in light of the Supreme Court’s decision in Trimble v Gordon (430 US 762), wherein the court struck down an Illinois statute which permitted an illegitimate to inherit from his father only upon proof that his parents had subsequently intermarried. (Ill Rev Stat, ch 3, § 12 [1961].)
In distinguishing our statute, we noted that the standard of review to be applied "while 'less than strict scrutiny’, is nonetheless 'not a toothless one.’ ” (Matter of Lalli, 43 NY2d, at p 67, supra, quoting Trimble v Gordon, 430 US, at p 767, supra.) Although we acknowledged that a remote rational relationship between our statute and a legitimate State purpose would be insufficient to sustain its constitutionality, we also observed that the Supreme Court recognized that "[t]he orderly disposition of property at death requires an appropriate legal framework, the structuring of which is a matter particularly within the competence of the individual States. In exercising this responsibility, a State necessarily must enact laws governing both the procedure and substance of intestate succession. Absent infringement of a constitutional right, the federal courts have no role here, and, even when constitutional violations are alleged, those courts should accord substantial deference to a State’s statutory scheme of inheritance.” (Matter of Lalli, 43 NY2d, at pp 68-69, supra, quoting Trimble v Gordon, 430 US, at p 771, supra.)
With this standard of review in mind, we sustained the *144 limitation upon an illegitimate’s right to inherit from his father contained in EPTL 4-1.2 (subd [a], par [2]). Appellant’s claim of unconstitutionality presents no greater challenge. An order of filiation declaring decedent’s father to be John Fay, also the father of the appellant by Hattie Fadley, was never made. Certainly, if in the absence of an order of filiation an illegitimate child may constitutionally be precluded from inheriting from his father, it is beyond reproach to preclude, in the absence of a filiation order, inheritance by the paternal kindred of the illegitimate. We are not concerned with a natural child claiming to be a distributee from his father, nor a situation where a putative father makes a claim as against his illegitimate child, but rather a situation where another individual who claims to be a half-sister of a decedent through a common father seeks a share in the illegitimate’s estate.
Appellant challenges, however, the facial constitutionality of the preclusion of inheritance by paternal kindred of an illegitimate, other than the father, irrespective of the existence of an order of filiation. Applying a less than strict scrutiny, but yet not a "toothless” standard of review, we hold that the preclusion of inheritance by the paternal kindred of an illegitimate, at least where there has been no order of filiation, is not violative of equal protection.
EPTL 4-1.2 was enacted by the Legislature on the basis of the study and recommendations of the Bennett Commission on Estates (Fourth Report, Temporary State Commission on the Modernization, Revision and Simplification of Laws of Estates, NY Legis Doc 1965, No. 19, pp 233-271). It was the commission’s belief that the maternal kindred of an illegitimate child would often have knowledge of the child’s birth whether or not an order of filiation was ever made. In contrast, the commission believed that frequently the paternal kindred of an illegitimate may not have knowledge of the child’s birth, notwithstanding the existence of an order of filiation. By excluding paternal kindred, other than the father, from the class of an illegitimate’s distributees, the commission sought to avoid creation "by law [of] a family group that did not exist in reality.” (Id., at p 266.)
It should not be overlooked that this exclusion is not directed at the illegitimate. It is not a punishment for the conduct of his or her parents. Nor are individuals related to the illegitimate decedent denied inheritance on the basis of their sex. It is merely a legislative judgment designed to *145 ensure that only the true members of an illegitimate’s family are permitted to share in his or her estate. In addition, it serves a legitimate purpose in providing for the orderly settlement of estates and the dependability of title to property passing under our laws of intestate distribution. We thus find no constitutional infirmity in precluding inheritance by the paternal kindred of an illegitimate.
The order of the Appellate Division should be affirmed, with costs, payable out of the estate to all parties separately appearing and filing separate briefs.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed, etc.